J-S14030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.C.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.M., FATHER | : | |
| | : | No. 41 EDA 2025 |

Appeal from the Decree Entered December 4, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000337-2024

BEFORE: DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.: FILED MAY 30, 2025

C.M. ("Father") appeals from the decree entered by the Philadelphia County Juvenile Court ("orphans' court") involuntarily terminating his parental rights to ("Child"), born in April 2011, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1] Father's counsel, Attorney James J. DeMarco, Jr. ("Attorney DeMarco"), has filed a petition to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). After review, we grant Attorney DeMarco's petition to withdraw and affirm the termination decree.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] In a separate decree, the orphans' court involuntarily terminated the parental rights of Child's mother, M.F. ("Mother"). Mother has filed a separate appeal docketed at 20 EDA 2025.

Mother and Father are parents to Child but were not married. On February 26, 2024, the Philadelphia County Department of Human Services ("DHS") received a general protective services report alleging that Mother had an accidental drug overdose, Child had observed the overdose and called 911, and Mother had tested positive for PCP, benzodiazepines, and opiates. DHS conducted further investigation, and found Child had not attended school since December 13, 2022. Additionally, Mother informed DHS that she and Father were no longer together, Father had left behind prescription medication that she mistakenly took, and she had a protection from abuse ("PFA") order against Father that expires in May 2026.

On May 31, 2023, DHS created single case plans for the parents. The objectives for Father included making his whereabouts known to the Community Umbrella Agency ("CUA"), avail himself to the CUA case manager for planning as it related to Child, and abide by the terms of the PFA.

In the interim, DHS filed a dependency petition as to Child. On June 16, 2023, following a hearing, the orphans' court adjudicated Child dependent, but allowed him to continue residing with Mother. The orphans' court also referred Father to Achieving Reunification Center ("ARC") for domestic violence, anger management, and parenting classes.

At the permanency review hearing on July 18, 2023, the orphans' court found Father to be noncompliant with his plan and Mother to be minimally compliant with her plan. The orphans' court again ordered Father to attend

the ARC classes and provide CUA with proof of employment. The court noted that Mother had tested positive for opiates on two occasions and transferred custody of Child to DHS. DHS initially placed Child with kinship resource, but in December 2023, placed Child in the preadoptive home of R.S. ("Foster Mother").

The court held additional permanency review hearings between October 2023 and September 2024, repeatedly finding Father to be noncompliant with his plan. In April 2024, DHS revised Father's single case plan, providing, inter alia, that he could have supervised visits with Child at DHS as long as he confirmed his attendance forty-eight hours prior to the visit. Father never visited Child at DHS. Instead, he was found at Mother's home on at least one occasion, despite the PFA order entered against him.

On September 4, 2024, DHS filed a petition to involuntarily terminate both parents' rights pursuant to section 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b). The orphans' court held a hearing on December 4, 2024, at which Shiera Williams ("Williams"), a CUA case manager supervisor, and Angel Washington ("Washington"), a CUA case manager, testified. Neither parent appeared at the hearing nor presented any evidence. At the termination hearing, Child was represented by the guardian ad litem ("GAL") that represented him in his dependency matter, Attorney Andrew Martino, and by Attorney Pierre

Simonvil, who was appointed to serve as Child's legal counsel.[2]  The orphans'

court ultimately terminated Father's parental rights pursuant to sections

2511(a)(1), (2), (5), (8), and (b).

Father timely appealed and filed a concise statement of errors

complained of on appeal pursuant to Pa.R.A.P. 1925.  Concurrently, Father's

counsel filed a motion to withdraw as counsel.  The orphans' court granted the

motion to withdraw, and appointed Attorney DeMarco as appellate counsel.

Further, the orphans' court issued an opinion, which cited its reasons for

terminating Father's parental rights at the conclusion of the hearing.  On

March 7, 2025, Attorney DeMarco filed in this Court a motion to withdraw and

a brief pursuant to **Anders**.

When an **Anders**/**Santiago** brief is before this Court, we may not

review the merits of any possible underlying issues without first examining

counsel's request to withdraw.  **In re Adoption of B.G.S.**, 240 A.3d 658, 661

---

[2] Notably, the orphans' court appointed Attorney Simonvil on Child's dependency docket, not the termination docket.  **See** 23 Pa.C.S. § 2313(a) ("The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents.").  Nevertheless, Attorney Simonvil represented Child throughout the termination proceedings.  Although the orphans' court should have entered an order appointing Attorney Simonvil on the termination docket, we find no structural error and decline to remand for the entry of such an order.  **See In re T.S.**, 192 A.3d 1080, 1090 n.19 (Pa. 2017) (where counsel represented child's legal interests and as GAL during termination proceeding despite a lack of an order appointing him to this role, concluding that although "[i]t would be a better practice for the court to place an order on the record formalizing the GAL's role for termination purposes, … we are disinclined to elevate form over substance").

(Pa. Super. 2020); *see also In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (explaining that the *Anders*/*Santiago* procedure for court-appointed counsel seeking to withdraw has been extended to appeals involving termination of parental rights).

To withdraw pursuant to *Anders*, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous[.]" *In re J.D.H.*, 171 A.3d 903, 907 (Pa. Super. 2017) (citation omitted). Additionally, counsel must file an *Anders* brief that satisfies the following criteria:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*B.G.S.*, 240 A.3d at 661 (quoting *Santiago*, 978 A.2d at 361).

Finally, counsel also must provide a copy of the *Anders* brief to the client, along with a letter that advises the client of the immediate right to either retain new appellate counsel or proceed pro se, and to "raise any points that the appellant deems worthy of the court's attention in addition to the

points raised by counsel in the ***Anders*** brief." ***In re X.J.***, 105 A.3d 1, 4 (Pa. Super. 2014) (citation and brackets omitted).

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." ***Id.*** (citation omitted). Our independent review is not limited to the issues that counsel discussed in the ***Anders*** brief, but extends to "additional, non-frivolous issues" that counsel may have overlooked. ***J.D.H.***, 171 A.3d at 908 (citation omitted). An appeal is frivolous when it "lacks any basis in law or fact." ***Santiago***, 978 A.2d at 356 (citation omitted).

We conclude that Attorney DeMarco's petition to withdraw and ***Anders*** brief comply with the requirements outlined above. Attorney DeMarco has filed a petition with this Court stating that after reviewing the record, he finds this appeal to be wholly frivolous. ***See*** Petition for Leave to Withdraw as Counsel, 3/7/2025. Further, Attorney DeMarco attached to his petition to withdraw the letter he sent to Father, which enclosed the petition and ***Anders*** brief. ***See*** Letter, 3/7/2025. Attorney DeMarco's letter advised Father of his right to proceed pro se or with private counsel, and to raise any additional issues that he deems worthy of this Court's consideration. ***Id.*** In conformance with ***Santiago***, Attorney DeMarco's brief includes summaries of the facts and procedural history of the case, raises the issues arguably supporting Father's appeal, and sets forth his conclusion that the appeal is

frivolous, including discussion and citations to the record in support of his conclusion. Father's Brief at 9-26. Because Attorney DeMarco has complied with the technical and procedural requirements for withdrawing from representation, we turn our attention to the issues raised in the *Anders* brief: "Whether the [orphans' c]ourt abused its discretion and/or erred as a matter of law in termination [F]ather's parental rights under 23 Pa.C.S. [§] 2511(a) and (b) because the decision was not supported by competent evidence." Father's Brief at 8.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the [orphans'] court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

***In re Adoption of C.M.***, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a bifurcated analysis. ***See id.*** at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." ***In re C.M.K.***, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Matter of Adoption of L.C.J.W.***, 311 A.3d 41, 48-49 (Pa. Super. 2024) (citation omitted).

"This Court may affirm the [orphans'] court's decision regarding the termination of parental rights with regard to any one subsection of [s]ection 2511(a)." ***In re J.F.M.***, 71 A.3d 989, 992 (Pa. Super. 2013). We focus our analysis on section 2511(a)(1), which provides that termination is proper if "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled

purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1); *see also C.M.*, 255 A.3d at 363-64.

"'Parental duties' are not defined in the Adoption Act." *In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021). However,

> our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life.

*Id.* (citations and quotation marks omitted).

"When considering a request to terminate rights under [s]ection 2511(a)(1), a parent's failure or refusal to perform parental duties must be analyzed in relation to the particular circumstances of the case." *Id.* (citation and quotation marks omitted). "[T]he focus under [section] 2511(a)(1) is not the degree of success a parent may have had in reaching the child, but examines whether, under the circumstances, the parent has utilized all available resources to preserve the parent-child relationship." *C.M.*, 255 A.3d at 365.

> Even where the evidence clearly establishes a parent has failed to perform affirmative parental duties for a period in excess of six months, the court must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of parental rights.

*Id.* at 364 (citation, brackets, and quotation marks omitted). Courts may "consider the whole history of a given case and not mechanically apply the six-month statutory provision, although it is the six months immediately preceding the filing of the petition that is most critical to the analysis." *Id.* (citation, brackets, and quotation marks omitted).

With these tenets in mind, we turn to the orphans' court's findings of fact. The orphans' court found that throughout the life of the case, Father has not performed any parental duties in the six months preceding the filing of the termination petition. N.T., 12/4/2024, at 35-36. In fact, the orphans' court highlighted that Father had no contact with DHS or Child except when he appeared at Mother's home, despite Mother's PFA against him and the fact he never advised the court of any visits. *Id.*

Our review of the record supports the orphans' court's findings. Williams testified that Child was removed from Mother's care in July 2023. *Id.* at 7-9. Child reported to her that Father was in the home during Mother's visits, and on one occasion, a CUA team observed Father at Mother's home, and he did not allow the team to enter. *Id.* at 12. Williams testified that Father did not maintain consistent contact with CUA. *Id.* at 18. She noted that Father never allowed them to do a home assessment or provide them with a home address; instead, he indicated he resided at a shelter despite evidence he was at Mother's home. *Id.* at 18, 25.

Williams stated that Father was aware of his single plan objectives, including addressing parenting, housing, employment, and domestic violence but that he failed to comply with any of his objectives and made no progress on the objectives. *Id.* at 19-20, 21. Williams noted that Father does not provide financial support or send cards or gifts to Child. *Id.* at 21-22. Further, Williams testified that Father was aware he could have supervised visits with Child at DHS but he never visited and provided no explanation. *Id.* at 19, 21.

Based on the evidence presented at the termination hearing, the record fully supports the orphans' court's conclusion that Father failed to perform any parental duties in the six months prior to DHS filing the termination petition and beyond. Father presented no evidence to explain his lack of compliance with his objectives or to make any effort to parent Child. Accordingly, we conclude that the orphans' court acted within the bounds of its discretion when it granted the petition to involuntarily terminate Father's parental rights pursuant to section 2511(a)(1). We therefore agree with Attorney DeMarco that any claim that the orphans' court erred or abused its discretion as to of its decision under section 2511(a)(1) is frivolous.

We next turn to whether the orphans' court failed to consider Child's needs and welfare and the effect termination would have on him under section 2511(b). Father's Brief at 25. Father argues that terminating his rights would have "extreme emotional consequences" for Child. *Id.*

Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Our analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *T.S.M.*, 71 A.3d at 267. "[T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *Id.* (quotation marks omitted). It is not enough that there exists a bond between parent and child to avoid termination. *See Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023). Rather, the trial court must determine whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.* at 1105-06. Focusing on the "child's development, and mental and emotional health," the trial court should assess whether severing the bond "is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm" to the child. *Id.* at 1110-11.

Additionally, "the parental bond is but one part of the overall subsection (b) analysis[.]" *Id.* at 1113. The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *Id.* (citations omitted). "These factors and others properly guide the court's analysis of the child's welfare and all [their] developmental, physical, and emotional needs." *Id.* Importantly, "[orphans'] courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." *Id.*

The orphans' court found that Father and Child had no parent-child relationship. N.T., 12/4/2024, at 38. The court noted that Father had not seen Child and has not been a positive influence in Child's life. *Id.* It further found that Child had no desire to reunify with Father. *Id.*

The record confirms the orphans' court's findings. Williams testified that there is no parent-child relationship between Child and Father. N.T., 12/4/2024, at 21. She indicated Child said he had no relationship with Father, had not seen him in years, and the first time Child saw Father was in court. *Id.* Williams stated that Child would not experience irreparable harm by the termination of parental rights. *Id.* at 22. She further testified that Child

wanted to be adopted by Foster Mother. *Id.* at 24. Williams confirmed that Child was doing well in Foster Mother's home and had no issues with the other children in the home. *Id.*

Washington likewise testified that Child is ready to be adopted by Foster Mother. *Id.* at 27. She stated that Foster Mother gives "tender, loving care" to Child, and that Foster Mother takes care of Child when he is sick, provides for him financially, and is willing to adopt him. *Id.* at 28-29. In Washington's view, Child would be distressed if he were not allowed to be adopted by Foster Mother and noted that he and Foster Mother have a positive bond. *Id.*

Based on the record before us and the standard of review we must employ, the unrefuted evidence established that Foster Mother meets Child's needs and provides for his emotional, medical, and physical welfare, and Child will not be irreparably harmed by terminating Father's parental rights. *See K.T.*, 296 A.3d at 1113. Child has no bond with Father, and the record reflects that Father did not engage in a caregiving role or meet Child's developmental needs. *See In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (stating "where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists"). Further, Child looks to Foster Mother to meet his needs and welfare, and Foster Mother intends to adopt Child. We therefore conclude that the orphans' court did not err or abuse its discretion in determining that Child's developmental, emotional, and physical needs and welfare are best met by terminating Father's parental rights. *See In re P.Z.*,

113 A.3d 840, 852 (Pa. Super. 2015) (finding termination of parental rights supported under section 2511(b) where no attachment between child and parent existed and parent did not have a history of engaging in a caregiving relationship with child or taking responsibility for child over an extended period). We agree with Attorney DeMarco that any contrary claim is frivolous.

Our independent review of the record has disclosed no non-frivolous issues overlooked by Attorney DeMarco. *See J.D.H.*, 171 A.3d at 908. Therefore, we grant Attorney DeMarco's petition to withdraw from representation and affirm the decree terminating Father's parental rights to Child pursuant to section 2511(a)(1) and (b).

Petition to withdraw granted. Decree affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/30/2025